The Full Commission has reviewed the prior Opinion and Award based on the record of the proceedings before Deputy Commissioner Margaret Morgan and the briefs and oral arguments on appeal. The appealing party has shown good ground to reconsider the evidence. Upon reconsideration of the evidence of record, the Full Commission reverses the prior Opinion and Award and enters the following Opinion and Award.
***********
EVIDENTIARY RULING
All objections raised by counsel in the depositions are ruled upon in accordance with the applicable law and with the Opinion and Award in this case.
***********
The Full Commission finds as fact and concludes as matters of law the following, which were entered into by the parties at the hearing on 23 February 1996 as:
STIPULATIONS
1. All parties are properly before the North Carolina Industrial Commission, and the Industrial Commission has jurisdiction over the parties and the subject matter.
2. At the time of the injury, an employee-employer relationship existed between plaintiff and defendant-employer.
3. At that time, defendant-carrier American States Insurance Company was the workers' compensation carrier on the risk.
In addition, the parties stipulated to a binder of medical records, which have been received into evidence.
***********
Based on the evidence of record, the Full Commission makes the following:
FINDINGS OF FACT
1. At the time of the hearing before Deputy Commission Morgan, plaintiff was forty-seven years old and began working for defendant-employer in 1986 or 1987 as a helper. By December 1991, he had advanced to supervisor and tile setter, running jobs, laying tile and doing brickwork and other construction related duties.
2. On 22 December 1991, plaintiff was working on an indoor renovation job at Goodwill Industries and was using a jackhammer to remove old flooring. As the result of his exposure to the noise and/or extended shaking from the jackhammer, plaintiff began to experience a headache. After several days of working around the noise of the jackhammer, plaintiff's ears began to ring. Plaintiff reported this to his supervisor, who suggested he see a doctor.
3. On 15 January 1992, plaintiff began treatments with Dr. Ann Quinn Bogard, a medical doctor with a specialty in ear, nose and throat. Plaintiff reported to Dr. Bogard that he had experienced ringing in both ears following his work with the jackhammer and resulting noise exposure on 19 December 1991. The ringing in plaintiff's ears was diagnosed as tinnitus with the additional problems in his right ear being the result of an unrelated infection. An audiogram revealed conductive hearing loss in plaintiff's right ear related to the infection and high frequency hearing loss caused by his work related noise exposure.
4. Dr. Bogard continued to treat plaintiff's hearing loss, tinnitus and right ear infection. Eventually, following surgery and treatment with medications, plaintiff's right ear infection resolved, but he continued to experience problems with tinnitus.
5. Plaintiff was able to continue working for defendant-employer until 20 April 1992, when Dr. Bogard removed him due to the drowsiness and other side effects of the medication prescribed for his tinnitus. These medications included Xanax, Seldane, Antivert and Dyazide.
6. On 1 October 1992, at defendants' request, plaintiff was seen by Dr. John T. McElveen, Jr., an otologist and neurotologist at Duke University Medical Center. Dr. McElveen agreed with Dr. Bogard's diagnosis. Dr. McElveen was of the opinion that plaintiff would need ear protection in order to return to work for defendant-employer.
7. In December 1992, Dr. Bogard was initially of the opinion that plaintiff could return to work for defendant-employer. However, because of the side effects associated with his condition and medication, plaintiff was unable to at that time and has not returned to work since 20 April 1992. In early 1993, due to plaintiff's continued problems, Dr. Bogard again ordered that plaintiff was unable to return to work. Dr. Bogard gave not target date for plaintiff's return to work at that time.
8. On 11 January 1993, at defendants' request, plaintiff was seen by Dr. John S. May, an assistant professor of otolaryngology at The Bowman Gray School of Medicine. Dr. May was of the opinion that plaintiff could return to work with the recommendation that his duties not include working with jackhammers. Dr. May indicated that if plaintiff had to use a jackhammer, he should use high quality approved ear protection.
9. With regard to the problems related to his tinnitus that plaintiff was experiencing, Dr. Bogard opined that this condition can interfere with a patient's ability to concentrate and perform certain tasks. Dr. Bogard further opined that this condition can effect a patients sleep and overall ability to function. As the result of these types of problems, plaintiff was referred to Dr. Dan Pollock, a psychologist, in March 1994.
10. In March of 1994, plaintiff began seeing Dr. Pollock for the psychological problems associated with his physical condition. At that time, plaintiff was experiencing great anxiety and feelings of helplessness due to his condition. Based on his treatments and examinations of plaintiff, Dr. Pollock was of the opinion that the cumulative effect of the ringing in plaintiff's ears and the distractions caused by this made him susceptible to anxiety and panic attacks. Dr. Pollock further testified that plaintiff could not return to full-time work.
11. On 12 July 1994, plaintiff was evaluated by Constance Lommel, a certified rehabilitation nurse. At that time, Ms Lommel attempted to assure plaintiff that defendants would provide a modified position. However, no firm offer of a suitable position was ever formally offered by defendant-employer to plaintiff.
12. Plaintiff has otherwise cooperated with defendants in their rehabilitation efforts and expressed to Ms. Lommel his desire to be able to return to work for defendant-employer.
13. At the meeting with Ms. Lommel on 12 July 1994, plaintiff expressed concern regarding his financial situation and his continued benefits. The Full Commission finds that plaintiff's concerns in this regard are not indicative of malingering or an intent to avoid treatment towards returning to work.
14. Dr. Bogard, who was present at this meeting, also expressed concern regarding plaintiff's ability to return to work and his entitlement to further benefits. Some of Dr. Bogard's expressed opinions regarding plaintiff's benefits went beyond the area of her medical expertise. Her statements in this regard are not given weight by the Full Commission.
15. At this meeting on 12 July 1994, Dr. Bogard also related that in arriving at an opinion regarding plaintiff's ability to return to work she would take into consideration what plaintiff informed her about his current symptoms. The Full Commission finds that Dr. Bogard's use of plaintiff's reports of problems and symptoms to be reasonable in making a determination about his ability to return to work. Dr. Bogard's opinions on this issue were not based solely on plaintiff's report of problems, but also on her treatment history with plaintiff, her medical training and experience. Additionally, the Full Commission finds that Dr. Bogard's opinions regarding plaintiff's medical condition and his ability to return to work were not tainted as the result of her extraneous opinions and expressed concerns regarding his benefits.
16. Following her meeting with plaintiff, Ms. Lommel sought to have plaintiff examined by another physician, and plaintiff was ordered by the Industrial Commission to attend an examination with Dr. William H. Roberts.
17. On 13 December 1995, plaintiff was examined by Dr. Roberts. Dr. Roberts testified in his deposition that there is no effective medical treatment for tinnitus. He also expressed doubt about the effectiveness of the medications that plaintiff was taking with regards to this condition. However, the medications prescribed for plaintiff were not given in an attempt to cure his tinnitus, but rather were aimed at relieving the symptoms associated with this condition and related physical and psychological problems. Dr. Roberts further opined that plaintiff had reached maximum medical improvement with regard to the tinnitus and that he could return to work in a position that did not expose him to loud noises or to positions which did expose him to noise if he were equipped with proper ear protection.
18. An Industrial Commission Form 21 Agreement for Compensation for Disability, was entered into and signed by the parties and subsequently approved by the Industrial Commission on 5 October 1992. Pursuant to this Form 21, defendants voluntarily agreed to pay plaintiff temporary total disability benefits for "necessary" weeks for his tinnitus and hearing loss. Defendants have been paying plaintiff temporary total disability compensation pursuant to the Form 21 agreement since April 1992.
19. Defendants contend that the Form 21 in question was entered into based on a mutual mistake as to whether plaintiff's condition was compensable. However, the issue of the compensability of plaintiff's claim was decided by the parties upon entering the Form 21. Although defendants may have been mistaken as to the law regarding plaintiff's condition, based on the evidence of record, there was no mutual mistake of fact involved in the circumstances of entering the Form 21 at issue.
20. As a result of his admittedly compensable injury by accident, plaintiff has reached maximum medical improvement for his tinnitus condition, but continues to experience the symptoms associated with tinnitus along with side effects related to medication. At present, plaintiff continues to experience dizziness, limited concentration and other psychological problems as the result of his tinnitus condition and prescribed medication. When plaintiff does not take the prescribed medication he is unable to sleep more than a few hours due to the constant ringing in his ears. These additional problems and side effects are the direct and natural result of plaintiff's tinnitus condition.
21. The Form 21 Agreement for compensation gives plaintiff a presumption of continued disability and defendants have failed rebut this presumption.
***********
Based upon the foregoing findings of fact, the Full Commission concludes as follows:
CONCLUSIONS OF LAW
1. The Commission may set aside an approved Form 21 Agreement for Compensation when it was entered into based on a mutual mistake of fact "common to both parties and by reason of it each has done what neither intended." G.S. § 97-17; FinancialServices v. Capitol Funds, 288 N.C. 122, 217 S.E.2d 551 (1975). A mutual mistake of law is ordinarily not sufficient to set aside a contract or agreement. Green v. Spivey, 236 N.C. 435,73 S.E.2d 488 (1952). The Form 21 Agreement for Compensation entered into by the parties in the case at hand, which was approved by the Commission on 5 October 1992, was not entered into based on a mutual mistake of fact and accordingly, is not set aside. G.S. § 97-17.
2. The additional physical and psychological problems plaintiff continues to experience are causally related to his admittedly compensable primary condition. G.S. § 97-2(6).
3. The approved Form 21 Agreement for Compensation gives plaintiff to a presumption of continued disability which defendants have failed to rebut. Kisiah v. W.R. Kisiah Plumbing,124 N.C. App. 72 (1996). Plaintiff is therefore entitled to continued payments of temporary total disability compensation pursuant to the terms of the Form 21 and defendants are not entitled to cease payments thereof until plaintiff returns to suitable employment with defendant-employer or another employer or until further order of the Commission. G.S. § 97-29.
4. As the result of his admittedly compensable injury, plaintiff is entitled to have defendant pay for all related medical expenses incurred or to be incurred, including psychological counseling as necessary. G.S. § 97-25.
***********
Based upon the foregoing findings of fact and conclusions of law, the Full Commission reverses the holding of the Deputy Commissioner and enters the following:
AWARD
1. Defendants shall continue to pay plaintiff temporary total disability compensation pursuant to the terms of the Form 21 approved on 5 October 1992, and are not entitled to cease payments thereof until plaintiff returns to suitable employment with defendant-employer or another employer or until further order of the Commission. Any compensation which has accrued from the time of the Deputy Commissioner's Opinion and Award to the date of this Opinion and Award shall be paid in a lump sum. This compensation is subject to the attorney's fee awarded herein.
2. Defendants shall pay for all related medical expenses incurred or to be incurred as the result of plaintiff's condition and related physical and psychological problems, including psychological counseling.
3. A reasonable attorney's fee in the amount of twenty-five percent (25%) of the compensation awarded above is approved for counsel for plaintiff. From any amounts having accrued, this fee shall be deducted form the amount owed to plaintiff and paid directly to counsel for plaintiff, with counsel for plaintiff receiving every fourth check thereafter.
4. Defendants shall pay the costs.
 S/ ______________ CHRISTOPHER SCOTT COMMISSIONER
CONCURRING:
S/ ______________ THOMAS J. BOLCH COMMISSIONER
S/ ______________ DIANNE C. SELLERS COMMISSIONER